---

DICKASON v. FISHER, *Appellant.*

Division Two, February 3, 1897.

1. **Vendor's Lien:** ASSIGNMENT. A vendor's lien, on land for which he has executed a general warranty deed, is assignable.

2. ———: ———: WAIVER. Where the assignee of such lien sues at law for the purchase money of the land, obtains judgment therefor, and causes the land to be sold under execution, he thereby waives his vendor's lien.

3. ———: ———: EXECUTION SALE: FRAUD. The purchaser at such execution sale *held*, under the facts of this case, not chargeable with fraud against the assignee of the lien.

4. —— : EQUITY. A vendor's lien, unlike that of a mortgagor, is only an equitable one; it has no existence as a lien until so established in a court of equity.

*Appeal from Ralls Circuit Court.*—HON. B. E. TURNER, Judge.

REVERSED.

*W. M. Boulware* and *G. A. Mahan* for appellant.

(1) The executions having been issued from the Hannibal court of common pleas, and made returnable to that court, the levy of them on the lands in Ralls county brought said lands, so far as said executions were concerned, under the exclusive jurisdiction of that court. Fisher, by buying at the execution sale, brought himself within that jurisdiction. As to all questions concerning that sale and the application of its proceeds the Hannibal court of common pleas, under whose process the levy and sale were made, had exclusive jurisdiction. That court had jurisdiction of the process, of the persons, and of the *res.* That jurisdiction was exclusive. Rorer on Judicial Sales, sec. 148–169, notes 3 and 5; *Ibid.*, secs. 250 and 601. (2) The judgment of the circuit court of Ralls county which was affirmed by this court in *Dickason v. Eby*, 73 Mo. 133, is a bar to this action. This proceeding is an attempt to indirectly enforce the vendor's lien which this court has adjudged that plaintiff Dickason abandoned. *Henry v. Wood*, 77 Mo. 280; *Armstrong v. St. Louis*, 69 Mo. 310; *Spurlock v. Railroad*, 70 Mo. 67; *Murphy v. De-France*, 101 Mo. 151; *State ex rel. v. Johnson*, 123 Mo. 54; *Mason v. Summers*, 24 Mo. App. 180; 1 Freem. on Judg., sec. 259. (3) Not only is the judgment in the first suit *res judicata* on the points to which the court

was required by the parties to form an opinion and
pronounce judgment, but also on every point which
properly belonged to the subject of litigation, and
which the parties exercising reasonable diligence might
have brought forward at the time. *Greenbaum v. Elliott*,
60 Mo. 25; *Robinson v. Boyd*, 23 S. W. Rep. 72; *Beloit
v. Morgan*, 7 Wall. 619; *Morris v. Bollers*, 31 Atl. Rep.
538; *Danoher v. Prentiss*, 22 Wis. 311; *Willis v. Tozer*,
21 S. E. Rep. 617; *Stone v. United States*, 64 Fed. 667;
*Greer v. Major*, 114 Mo. 157; *Jenkins v. Johnson*, 4
Jones Eq. (N. C.) 149; *Block v. Block*, 27 Ga. 40.
(4) The bill does not charge nor does the evidence
show any fraud on part of Fisher and Eby, certainly
not such fraud as would give respondent a remedy.
To afford relief it must be actual concocted fraud in
the very act of obtaining the judgment. *Nichols v.
Stevens*, 123 Mo. 116; *Oxley Stave Co. v. Butler Co.*,
121 Mo. 630; *McClanahan v. West*, 100 Mo. 320; *Irvine
v. Leyh*, 102 Mo. 207; *Nelson v. Barnett*, 123 Mo. 570;
*Richardson v. Stowe*, 102 Mo. 33; *Murphy v. DeFrance*,
101 Mo. 158; 2 Story's Eq. 1575; Bigelow on Fraud,
pp. 86, 87. (5) Admitting everything charged in the
bill to be true, there is no fraud shown. There is no
pretense that the conduct of Fisher and Eby caused
Dickason to obtain his judgments at law, and sell all
the land under his executions. It is fair to presume
that Eby was not anxious to have his farm sold under
these executions, at least there is no evidence that
either he or Fisher directly or indirectly induced or
influenced Dickason in his procedure. If Dickason
committed an error, it was his own deliberate mistake.
He waived the vendor's lien of his own free will and
can not consistently charge his action on Fisher and
Eby. *Rutherford v. Williams*, 42 Mo. 24; Kerr on
Fraud and Mistake, p. 42; Cooley on Torts, pp. 474,
502; *Detroit v. Weber*, 26 Mich. 284; *Long v. Marvin*,

Dickason v. Fisher.

15 Mich. 60; *Bank v. Albee,* 56 Am. Rep. 502; *Safford v. Grant,* 120 Mass. 20. (6) These parties "dealt at arms' length" on equal terms, and no peculiar relation of trust or confidence existed between them, each might well remain silent as to conduct and be safe. 8 Am. and Eng. Ency. of Law, p. 644; *Bank v. Bogarth,* 81 N. Y. 101; *Darnbman v. Schulting,* 75 N. Y. 55; *Law v. Grant,* 37 Wis. 548; *Laidlaw v. Organ,* 2 Wheat. (U. S.) 178; Kerr on Fraud and Mistake, 100; *Railroad v. Freloff,* 100 U. S. 24; *Ward v. Packard,* 18 Cal. 391; *Barnett v. Stanton,* 2 Ala. 181. (7) The vendor Wilton conveyed to the vendee Eby, by warranty deed, all the estate he had, and did not reserve a vendor's lien. Wilton only had an implied or equitable lien. Under such conditions Wilton could not assign his vendor's lien to Dickason. It is conceded that it would be otherwise if Wilton had retained the legal title. *Adams v. Cowherd,* 30 Mo. 461; *Smith v. Schneider,* 23 Mo. 447; *Stevens v. Chadwick,* 10 Kan. 406; *Strickland v. Summerville,* 55 Mo. 166; *Bailey v. Smock,* 61 Mo. 219; *Adair v. Adair,* 78 Mo. 633; *Avery v. Clark,* 81 Cal. 619; *Grahen v. Richardson,* 128 Ill. 178; *Soule v. Hurlbut,* 58 Conn. 511; *Law v. Butler,* 44 Minn. 482; *Simpson v. Montgomery,* 25 Ark. 365; *Williams v. Christian,* 23 Ark. 255. (8) The trial judge committed grave error in conceding that Dickason was a senior lien holder, in the face of the decision of the supreme court, holding that he had abandoned the vendor's lien, and hence had no lien. The surplus only stands in the place of the land with reference to those having liens or vested rights therein. Herman on Ex., 456 and cases; 2 Freeman on Ex., sec. 440; *Strawbridge v. Clark,* 52 Mo. 22; *Reed v. Shepperd,* 38 Mo. 463; *Reid v. Mullins,* 43 Mo. 308; *Foster v. Potter,* 37 Mo. 534; *Sparrow v. Hosack,* 40 Ohio St. 253; *Rudy's Appeal,* 94 Pa. St. 338; *Indiana Co. Bank's Appeal,* 95 Pa. St. 500.

*Alexander Martin* and *F. L. Schofield* for respondent.

(1) At the time the agreement between Fisher and
Eby was entered into the effect of a sale of the pur-
chaser's interest in land under judgment and execution
at law to satisfy the vendor's lien, was an unsettled
question in the jurisprudence of this state. *Broadwell
v. Yantis*, 10 Mo. 398; *Delassus v. Poston*, 19 Mo. 425;
*Lumley v. Robinson*, 26 Mo. 364; *Gaston v. White*, 46
Mo. 486; *Lewis v. Chapman*, 59 Mo. 371. (2) In the
subsequent case of *Dickason v. Eby*, 73 Mo. 133, the
question was first definitely determined, and the doc-
trine established that the effect of such a sale would
be to extinguish the lien as to the land sold, not only
as to the installments included in the judgment, but as
to installments falling due in the future, and not in-
cluded in the judgment at law. (3) The operation of
this doctrine is confined to a sale made to a stranger—
a person outside of the parties to the judgment—or
one not bound to pay it. *Dickason v. Eby*, 73 Mo. 133;
*Hilton v. Bissel*, 1 Sandf., ch. 407; *Plum v. Studebaker*,
89 Mo. 162; *Moore v. Lindsay*, 52 Mo. App. 474;
*Tompkins v. Halstead*, 21 Wis. 118; *Stiger v. Mahone*,
24 N. J. Eq. 426; *Otter v. Vaux*, 6 DeGex, M. & G. 638;
2 Jones on Mort. [3 Ed.], 1887. (4) When the sale
at law operates to extinguish the lien of the junior
incumbrancer, it attaches to the surplus proceeds of
the sale or the liability to pay them. *Helwig v. Heit-
camp*, 20 Mo. 569; *Major v. Hill*, 13 Mo. 247; *Mead v.
McLaughlin*, 42 Mo. 198; *Huffard v. Gottberg*, 54 Mo.
271; *Reid v. Mullins*, 43 Mo. 306; *Johnson v. Wilson*,
77 Mo. 639; *Reid v. Mullins*, 48 Mo. 344; *Imp. Co. v.
May*, 24 S. W. Rep. (Tex.) 40; 2 Freeman on Ex.
[2 Ed.], sec. 447. The lien attaches to the liability to
pay. 2 Spenc. Eq. 796. (5) If at such sale the third
person or stranger does not buy for himself in good

faith or for some one not bound to pay the junior lien, the effect of extinguishing the junior lien will not be legally accomplished. A collusive purchase for or in behalf of the debtor of the junior lien will not operate to divest the junior lien from the land sold. A lien can not be extinguished by fraud. *Converse v. Blumrich*, 14 Mich. 107; *McDole v. Purdy*, 23 Iowa, 277; *Sears v. Smith*, 2 Mich. 243; *Toby v. McAlester*, 9 Wis. 463; *Wickman v. Robinson*, 14 Wis. 493; *Thompson v. Elmore*, 18 S. W. Rep. (Ky.) 235. (6) The court was justified in laying hold of the land in Fisher's hands to enforce the liability of Fisher for violating the plaintiff's lien on the surplus proceeds of the sale. Rights in equity equivalent to liens may arise under an unlimited variety of circumstances. 2 Spenc., Eq. Jur. 803; 3 Pomeroy Eq. Jur. [2 Ed.], 1234, 1239. *First.* They may arise from fraud, actual or constructive. *Merrill v. Allen*, 38 Mich. 487; *Koch v. Roth*, 37 N. E. Rep. (Ill.) 317; *Newman v. Moore*, 21 S. W. Rep. 759; *Brown v. Byam*, 21 N. W. Rep. 684; *Yeoman v. Bell*, 29 N. Y. Supp. 502. *Second.* From breach of contract. *Walter v. Janney*, 14 S. Rep. (Ala.) 876; *Meyer v. Smith*, 21 S. W. Rep. (Tex.) 995; *Stewart v. Wood*, 63 Mo. 252; *Pratt v. Clark*, 57 Mo. 189; *Bennett v. Shipley*, 82 Mo. 448; *Cooper v. Merritt*, 30 Ark. 686; *Seibert v. Copp*, 62 Mo. 182; *Mays v. Sanders*, 36 S. W. Rep. (Tex.) 108. (7) This suit is not *res adjudicata*. At the time of the former suit the plaintiff knew nothing of the fraud and wrong which is made the material and distinguishing feature of this case. (8) The modern doctrine of *res judicata* is applied only when the issues in both cases are substantially identical. Freeman on Judgments [3 Ed.], sec. 256; 2 Black on Judgments [Ed. 1891], sec. 674; Black on Judgments [1 Ed.], sec. 828; *Phosphate Sewage Co. v. Molleson*, L. R. 4 App. Cas. 801; *Spurlock*

*v. Railroad*, 76 Mo. 67; *Moran v. Plankinson*, 64 Mo. 337; *Hickerson v. City*, 58 Mo. 61; *State ex rel. v. Alsup*, 91 Mo. 172; *Lightfoot v. Wilmot*, 23 Mo. App. 5; *Snodgrass v. Moore*, 30 Mo. App. 232; *Ford v. Hennessey*, 70 Mo. 580. (9) Identity of issues is determined by identity of evidence to support them. Freeman on Judgments [3 Ed.], sec. 259; 2 Black on Judgments, sec. 726. (10) The application of the doctrine is confined to matters which were properly in issue in the former case, and necessarily involved in its determination. They must necessarily have been decided to support the decree. Freeman on Judgments [3 Ed.], sec. 257; Wells, Res Adj., secs. 290-294. (11) The circuit court of Ralls county has jurisdiction over this suit. See *Edmondson v. Phillips*, 73 Mo. 57. (12) A vendor's lien has always existed in this state as a part of the system of equity jurisprudence adopted along with the common law. The right to assign it is the logical consequence of its existence. The lien and its assignability are settled questions in this state. *Sloan v. Campbell*, 71 Mo. 387; *Bailey v. Smock*, 61 Mo. 213; *Bank v. Robidoux*, 57 Mo. 446; 3 Pomeroy, Eq. Jur. [1 Ed.], 1254. After account filed a mechanic's lien can be assigned and enforced in the name of the assignee. *Jones v. Hurst*, 67 Mo. 568; *O' Connor v. Railroad*, 111 Mo. 185.

BURGESS, J.—This is an equitable proceeding to enforce a vendor's lien against certain real estate, or a part of the proceeds or liability therefor, arising from a sheriff's sale of said property at which defendant was the purchaser, and for which it is alleged his bid was not paid by him, in pursuance of the terms of the sale.

On the second day of February, 1871, Richard Wilton, by deed of general warranty conveyed to David S. Eby, certain lands lying in Ralls county, Missouri,

containing in all about four hundred and nineteen and twenty-eight hundredths acres. The conveyance was subject to a deed of trust in favor of one Helm in the sum of $5,000 upon the land conveyed, and fifty-seven acres adjoining the same. The consideration of this purchase was $10,000, and assumption of the $5,000 incumbrance. The $10,000 was not to be paid in cash at the sale; the purchaser had the option of paying it at any time inside of twenty years, provided he paid interest installments of $1,000 a year, while the principal remained unpaid. This contract for the purchase money was incorporated in the deed of sale to Eby, and was not evidenced by any note, mortgage, or deed of trust given back to him. Eby never paid but one installment of $1,000.

Under this deed Eby took possession of the land, and kept possession until the sale of the same to Fisher at sheriff's sale, as hereinafter mentioned, when he turned the possession over to Fisher.

On the twenty-second day of February, 1873, said Wilton and the plaintiff Dickason entered into a written agreement, whereby Wilton, for a valuable consideration in said agreement set forth, assigned and transferred to the plaintiff all of his right, title, and interest in and to the debt above mentioned, and also his vendor's lien on the land. On the seventh day of April, 1874, Wilton and plaintiff entered into another written agreement, whereby Wilton, for a valuable consideration, further assigned and transferred to plaintiff all of his right, title, and interest in the debt due from Eby to Wilton, and his vendor's lien on the land conveyed by him to Eby.

The larger tract of land was formerly owned by Harvey Wellman. At the time of the execution of the deed by Wilton to Eby, Wilton was the owner in fee simple of one hundred and eighty-eight and twenty-

eight hundredths of an acre of it, having acquired the same by purchase from the administrator of the estate of said Wellman. Of the remainder, being two hundred and thirty-one acres, he was the owner of an undivided three fifths by purchase from three of the heirs of said Harvey Wellman. The remaining two fifths interest in said two hundred and thirty-one acres he did not own, the same being owned by two other of the heirs of Harvey Wellman. These two interests were subsequently bought in by defendant Fisher. They cost him $2,200.

At the September term, 1873, of the Hannibal court of common pleas, plaintiff Dickason recovered judgment against David S. Eby for one of the interest installments of $1,000, and interest thereon, and at the December term, 1874, of said court he recovered judgment against said Eby for another of said payments and interest thereon. Upon these judgments plaintiff caused executions to be issued directed to the sheriff of Ralls county, the land levied upon, and sold at public vendue under said executions on the twenty-sixth day of March, 1875, during the sitting of the circuit court of said county of Ralls, at which sale defendant became the purchaser of all of said land at the price of $8,000. The land was sold in a body at the request of Eby and defendant, plaintiff making no objection thereto. Of the amount bid for it by defendant, he only paid at the time a sufficient amount to pay off the executions and costs, leaving a balance unpaid on the bid of $5,592.91.

The sheriff did not make defendant a deed at that term, but on becoming satisfied that D. S. Eby was entitled to the surplus over and above the amount necessary to pay off the executions and costs, on the procurement of D. S. Eby's receipt by defendant for that amount and its delivery to the sheriff, he thereafter, at the next September term of the circuit court of said

county, made, executed, and delivered to defendant a deed to the land.

Afterward, two others of said installments having become due and being unpaid, to wit, the installments which became due March 1, 1875, and March 1, 1876, plaintiff brought suit on them against defendant Fisher and D. S. Eby in the Ralls circuit court. In his petition he alleged the execution by Wilton to Eby of the deed conveying the lands to him, and the stipulations as to the purchase price and its payment; the assignment by Wilton to plaintiff of said indebtedness and vendor's lien; the failure of Eby to pay the two interest installments of $1,000 each, due, respectively, March 1, 1873, and March 1, 1874, and the recovery by plaintiff of judgments therefor in the Hannibal court of common pleas, also the issuance of executions on said judgments to the sheriff of Ralls county, the levy of the execution on the lands conveyed by the deed, the sale of the lands by the sheriff under the executions, and the purchase thereof by Fisher at the price and bid of $8,000.

The petition further alleged that of said bid Fisher only paid to said sheriff the sum of $2,408.04, which he applied to the payment of costs and to the satisfaction of said executions; that the balance of said bid, to wit, the sum of $5,592.96, said Fisher did not pay to said sheriff, and that said sheriff had not made deed to said Fisher; that the fifth and sixth installments of $1,000, due, respectively, March 1, 1875, and March 1, 1876, were due and unpaid by Eby.

The petition prayed judgment against said Eby for said unpaid installments and interest, and for a decree directing that said lands be sold for its payment, and for general relief.

David S. Eby, defendant therein, did not answer.

Defendant Fisher answered, denying the allega-

tion in the petition set out to the effect that he paid only $2,408.04 of his said bid. He denied that he had not paid to said sheriff the balance of said bid, to wit, the sum of $5,592.96, or that said sheriff, by reason thereof, had withheld from him a deed for said lands.

In addition to said denials said answer contained a direct affirmation of full payment of said bid as follows: "The defendant (Fisher) further answering said petition says that upon purchasing said lands at said sale made by said sheriff, under said executions as set out in plaintiff's petition, he paid to said sheriff the entire amount of his said bid, to wit, the sum of $8,000, and that said sheriff thereafter, in due form of law executed and delivered to this defendant his sheriff's deed therefor, whereby in consideration of said sum of $8,000 he conveyed said lands to this defendant. And this defendant says that plaintiff ought not again to subject said land or any part thereof to sale for said indebtedness."

The case came to trial at the March term, 1877. On said trial plaintiff introduced evidence as follows: *First*, the instrument of assignment from Wilton to Dickason of date April 7, 1874; *second*, a copy of executions from the Hannibal court of common pleas in case of *Dickason v. Eby*, and sheriff's indorsements and return thereon, showing the levy and sale thereunder and satisfaction thereof; *third*, the deed from Wilton to Eby of date February 2, 1871. He introduced no other evidence. Defendant Fisher at said trial read in evidence the deed from said sheriff to him, whereby, among other things, the payment by Fisher to said sheriff of his said bid in full, to wit, the sum of $8,000, was recited, acknowledged, and affirmed. This was all the evidence.

At the August term, 1877, the court dismissed plaintiff's petition and rendered a judgment in favor of

defendant for costs.    From this judgment plaintiff
appealed to the supreme court, where the judgment
was affirmed.   *Dickason v. Eby*, 73 Mo. 133.

The supreme court held that plaintiff, by electing
to proceed at law, and selling the lands under his exe-
cutions, had waived his vendor's lien.

He thereafter brought this suit, to the March term,
1884, of the Ralls circuit court, against David S. Eby
and this defendant.   The case was tried on plaintiff's
third amended petition in which Fisher, David S. Eby
and Benjamin F. Eby were made defendants.

In this petition is set out the execution by Wilton
of the deed conveying the land to Eby, and the stipu-
lations therein in regard to the purchase money and its
payment; the assignment by Wilton of said purchase
money indebtedness to plaintiff, Dickason; the recov-
ery by plaintiff as such assignee in the Hannibal court
of common pleas of the two judgments on interest
installments of $1,000 each, falling due March 1, 1873,
and March 1, 1874, respectively; the issuance by plain-
tiff of executions on said judgments to the sheriff of
Ralls county, and the levy of same on said lands;
the sale of said lands by said sheriff under said execu-
tions, and the purchase thereof by said Fisher at the
price and bid of $8,000.

The petition then alleges that Fisher and Eby two
or three days before the day of sale entered into a
fraudulent scheme to defraud plaintiff of his lien on the
lands, and divide the said lands between them free of
said lien, by substituting a false sale of same in the
place of a *bona fide* sale; that the effect on said lien of an
execution sale of said lands under a judgment for a part
of the purchase price, was an unsettled question; that
plaintiff was advised and believed that such sale would
leave said lien unaffected and still operative as to the

remainder of such indebtedness, while said Fisher and Eby were aware of the fact that such sale would free the lands so sold from all further lien for the remainder of the purchase money; that so understanding the law, and with such fraudulent purpose in view, said Eby refused to pay the annual installments falling due March 1, 1873, and March 1, 1874, and thereby invited and compelled plaintiff to bring suits thereon, get his said judgments, issue his said executions, and levy same upon said lands; that in further pursuance of said fraudulent intent said Fisher and Eby entered into an agreement to the effect that Eby should convey said lands to said Fisher, by deed for a recited consideration of $16,000, payable in sixteen years; that said Fisher and Eby were to attend said sheriff's sale and demand that said real estate be sold in a body; that said Fisher was to buy said lands at said sale and was to pay to the sheriff only such sum as should be necessary to satisfy said executions and costs, said Eby agreeing to furnish Fisher with his (Eby's) receipt for the excess for delivery to the sheriff; that in addition to the amount of said execution and costs, said Fisher was to pay off the said Helm note and deed of trust and all back taxes, and was to pay to said Eby, or to his use, enough more money to make the sum of $8,000; that said Fisher was to retain for his own use for his half of said lands sixty acres on which was the dwelling house, and the undivided half of forty acres of timber land, and all the remainder of said lands said Fisher was to hold to the secret use of Eby and convey them to him or at his order; that in further pursuance of said fraudulent scheme, said Fisher and Eby attended said sale and demanded that said lands be sold in a body, and that Fisher became the purchaser thereof in an entire body upon his bid of $8,000; that said Fisher paid to said sheriff only the

sum of $2,408.02 (the amount of said executions and costs), and for the balance of said bid, to wit, $5,591.98, paid nothing, but delivered to said sheriff the receipt of Eby therefor; that thereupon said sheriff executed and delivered to Fisher a deed for said lands.

It also alleges that said alleged agreement between Fisher and Eby was unknown to plaintiff until after the decision of that case and had been concealed from him; that plaintiff did not intend by said levy and execution sale to waive his lien.

The petition further alleged that the aggregate amount paid by Fisher on account of said purchase, and under his said agreement with Eby, was the sum of $3,983.02, leaving a cash balance due from Fisher to Eby under said agreement of $4,106.98, which balance Fisher had refused to pay. And further that Fisher had refused to convey said residue of said lands to Eby; that said Eby then was and has continued to be insolvent.

The petition recites the former suit and the judgment therein, and the fact that Fisher claims same to be a bar to this action. The court is asked to set aside said judgment or to adjudge that same is no bar to this suit; and that said execution sale and sheriff's deed were indirect forms resorted to by Eby and Fisher in the execution of said fraudulent purpose and were operative to satisfy said executions, and for any other purpose inoperative and void.

It then concludes with a prayer for relief upon the several grounds presented by the allegations in the petition.

Fisher answered admitting the execution of the paper by which it is claimed by plaintiff that Wilton assigned to him his vendor's lien, but denied that the lien passed to plaintiff by reason thereof or that it was assignable in any way. It admitted that de-

fendant, in bidding for the land at the sheriff's sale, assumed that the sale would pass the title in fee to the purchaser, and avers that it did so pass. Denied all fraud or intentional fraud on his part in and about the sale of the land, and that the sum of $5,591.98 or any other sum was unpaid by him on his bid.

It denied the alleged execution by Fisher of his note for $16,000, and the alleged design thereof, but admitted the execution of his note for $7,500. It sets out in detail the negotiations between Fisher and David S. Eby for the purchase by Fisher of a part of said lands for $7,500; the non-disclosure by Eby of said executions and purchase money lien; the ascertainment thereof by Fisher; the agreement to make the purchase, conditioned that Eby should pay off the executions and release that part of the land from the vendor's lien of Dickason; the manner in which Eby induced Fisher to sign said note; the failure of Eby to so release said part of said land from said liens; the consequent failure and abandonment of said trade, and the sale by the sheriff and the purchase by Fisher.

It set out the former suit; averred that the same issues were involved thereon that are involved in this, that judgment was rendered in favor of this defendant, and pleads the same in bar of this suit.

It also alleged that at the time of the execution by Wilton of his deed to Eby said Wilton was the owner only of an undivided three fifths interest in said land; that one undivided fifth interest therein was owned by E. G. Matson; that long after said sheriff's sale defendant purchased said one fifth interest of said Matson at the price and sum of $1,500 and received conveyance thereof; that at said time another one fifth interest in said lands was outstanding in one of the Wellman heirs, and was subject to mortgage lien of $200, and defendant long after said sheriff's sale

bought said interest at foreclosure sale at price of $200 and received deed therefor.

It further averred that after said sheriff's sale defendant tendered the full amount of his said bid ($8,000) to the sheriff and demanded a deed; that said sheriff declined to receive same until he could ascertain what to do with the excess; that thereafter said sheriff recognized the right of Eby to said excess, and directed defendant to pay same to said Eby; that thereupon defendant paid to said sheriff the sum of $2,612.04 ($215 thereof being costs and commissions) and paid to said Eby the balance of said bid, $5,387.96; that plaintiff from the time of said sheriff's sale down to the final decision of his said former suit, claimed and insisted that said Eby was the owner of said excess, and that said sale operated only to pass Eby's interest in the lands subject to plaintiff's still subsisting vendor's lien; that defendant had paid out and expended on account of said lands the sum of $12,904.66, and set forth the various sums making that amount and to whom paid.

While this suit was pending in the court below David S. Eby died and it was revived against Thomas R. Smith, his administrator.

The court made a finding of facts, which in effect found all the material allegations in the petition to be true, and then rendered judgment against Smith, administrator of Eby, and defendant, for the amount sued for, with interest and costs, and charged the land described in the decree with the payment of the judgment, and, if it proved to be insufficient to pay said judgment and costs, that plaintiff have general execution against Smith, administrator, and defendant Fisher for the balance.

The case is before this court for review on defendant Fisher's appeal.

Defendant's first insistence is, that as Wilton conveyed the land to Eby by warranty deed, and did not expressly reserve a vendor's lien, he only had an implied or equitable lien which was not transferable, and therefore the plaintiff never acquired any such lien by the assignment of Wilton to him. He concedes that it would be otherwise if Wilton had retained the legal title.

There are a great many authorities which sustain that position; indeed, such seems to be the great weight of authority.

In *Stevens v. Chadwick*, 10 Kan. *loc. cit.* 413, it is said: "In cases of lien, after absolute conveyance, the general drift of the authorities is to the effect that an indorsement of the note does not transfer the lien; and this upon the ground that, the lien not being the result of contract, but the mere creature of equity, a bare right of no operative force or effect until established by the decree of a court, is a purely personal privilege which can not be transferred."

This is but the enunciation of the general rule upon this subject.

But, whatever the rule may be elsewhere, it is no longer an open question in this state; nor has it been since the decision of *Sloan v. Campbell*, 71 Mo. 387, in which it was held otherwise; that is, that the assignee of a note given for the purchase money of land for which a general warranty deed had been made by the vendor to the purchaser, might enforce a vendor's lien against the land in the hands of the vendee, the same as the vendor himself could. It is said in that case:

"This was done in the case of *Adams v. Cowherd*, 30 Mo. 458, where there was only a bond for title; and, since the rule in regard to this lien, in favor of the original owner of the note, applied as well where there was an absolute conveyance, as where there was only a

bond for title, we see no reason why the principle asserted in that case should not be applied to the present.''

Such is the logical effect of the decision in *Dickason v. Eby*, 73 Mo. 133.

As a general rule all securities which are incident to the debt pass with its transfer and there seems to be no exception to that rule. in so far as this case is concerned.

But it is contended by defendant that, even if the vendor's lien did pass to plaintiff by virtue of the assignment thereof to him, plaintiff abandoned such lien by suing at law for the unpaid purchase money, procuring a judgment therefor and subjecting the land to sale under execution; that by electing to proceed at law he will be deemed to have waived his remedy in equity, and the purchaser took the land discharged of any further liability for the debt.

In *Dickason v. Eby, supra,* it was expressly held that where a vendor retains the legal title, and has simply given a title bond to convey upon the purchase, the vendee takes nothing but an equity, and, ''where the vendor sues at law and sells under his judgment all the right and interest of the vendee, the purchaser acquires at such sale only an equity, because that is all the vendee has; and the only right which the purchaser acquires is the right to pay whatever purchase money remains unpaid, and demand of the vendor a conveyance of the legal title according to the contract.   But in cases where the vendor has conveyed all his estate to the vendee without receiving the purchase money, its non-payment does not give to the vendor an equitable title or estate in the land itself, but only the right by a proceeding in equity to charge the legal estate in the hands of the purchaser with its payment.   Bispham's Eq., sec. 364, p. 428, and sec. 354. Such right of the vendor may be waived by taking an

independent security, or by any act which clearly indicates that the vendor does not rely upon it.'' (*Loc. cit.* p. 141.)

It would therefore seem that by prosecuting his suit to judgment for a part of the purchase money, and the sale of the land under execution issued thereon, plaintiff waived whatever vendor's lien he may have had on the land.

Plaintiff insists, however, that he did not intend, and in fact did not waive his lien, but that by a fraudulent combination between D. S. Eby and defendant they sought to cheat and defraud him out of said lien, and to accomplish that end agreed that defendant should buy the land at sheriff's sale, and hold it except a small portion in trust for Eby, and that in pursuance of said agreement defendant did purchase the land, and now holds it in trust for said Eby, and that as against him and defendant the lien should be enforced against the land or the amount of defendant's bid, over and above the debts, interest, and costs which was not paid by him to said sheriff.

With respect to the alleged fraud by defendant and Eby, the court found in accordance with plaintiff's contention; and while this court will usually defer to the finding of the chancellor in equity cases, it will not always do so, and in this case we are disposed to depart from the general rule, and to hold the finding to be unsupported by the evidence.

Without going into detail, the evidence at most only showed an arrangement between Eby and Fisher by which the latter bought the land at the sheriff's sale with the understanding between them that a part of it was to be conveyed to Eby on certain conditions, and with the knowledge that its purchase at sheriff's sale would release it from the vendor's lien, and that the excess of the bid over and above the amount necessary

to pay off the executions and costs, would go to Eby, which was no fraud upon plaintiff.

If there was any fraud committed by defendant on any person, if it be true as stated by Eby that after Fisher's purchase he refused to convey the land to him according to the terms of their agreement, it was upon him, and of this, plaintiff is not in condition to complain.

Moreover, defendant and Eby, subsequently to the sheriff's sale, settled the matters of difference between them by Fisher agreeing to convey to him a farm in Pike county; containing one hundred and twenty-seven acres at $4,000, pay the costs and expenses of two suits pending against him about the land, one by Enoch G. Matson, and the other by the Taylor estate, pay taxes amounting to $180, for which levy had been made on his personal property, pay the remainder due on the Helm note, and let him have the use or rent.of one hundred and forty acres of the land for a year at estimate of $5 per acre, which he agreed to take in payment of said balances, and put Fisher in possession of the land.

When Wilton conveyed the land to Eby he parted with the legal and equitable title, and thereafter possessed only a bare right to enforce against the land his lien as vendor, which in itself was of no operative force or effect, nor could it have been until established by the decree of the court. This lien he transferred to plaintiff, who, as has been said, waived it, so far as this case is concerned, when he had the land sold under his judgments, and realized from the sale the amount of his debt and interest.   He thereafter had no other lien on, or interest in the land, and after the satisfaction of said judgments it was the duty of the sheriff to pay over the proceeds to Eby (Herman on Executions [1 Ed.], pp. 457, 458); and it matters not how or when

this was done, so that Eby was satisfied with the arrangement.

The lien was in no sense a mortgage, but a mere creature of equity, not arising out of contract, and in this very important particular differs from a mortgage which passes the right of possession of the land after forfeiture to the mortgagee, subject to be defeated by the payment of the mortgage debt. Had there been a mortgage on the land the mortgagee would have been entitled to the surplus, but it is not so with respect to the lien of a vendor, which is merely an equitable lien.

"It is * * * a right, which has no existence, until it is established by the decree of a court in the particular case." *Gilman v. Brown*, 1 Mason, *loc. cit.* 221.

Fisher was a third party holding the land after his purchase in his own right, and for no other person.

From these considerations, if for no other, it logically follows that plaintiff can not maintain this action against defendant Fisher for that part of the purchase money which it is contended was not paid by him, nor against the land as the property of Eby. It is therefore unnecessary to pass upon other questions discussed by counsel in their briefs. The judgment is reversed and the petition dismissed. GANTT, P. J., and SHERWOOD, J., concur.