Holt v. Hanley.

---

## MARY E. HOLT, Appellant, v. O. T. HANLEY.

### Division One, July 11, 1912.

1. **APPEAL: Motion for New Trial: No Exception to Overruling: Matters for Review.** Where no exception is taken to the action of the trial court in overruling a motion for a new trial, the examination of errors upon appeal must be confined to such as appear upon the record proper.

2. **PLEADING: Confession and Avoidance: Dower.** A plea in an answer to a suit for admeasurement of dower in real estate, which denies every allegation not specifically admitted, and then proceeds to defend upon the ground that the land was sold under a judgment rendered on a creditor's bill, and payment made out of the fund so produced of the purchase price, during the life-time of the debtor, thus barring the widow's dower, will be treated as a plea in confession and avoidance which admits the marriage of the plaintiff and the death of her husband.

3. **DOWER: Definition.** Dower is not the result of contract but a positive institution of the State, founded on reasons of policy.

4. **———: Land Sold under Judgment on Creditor's Bill: Vendor Preferred.** Section 345, R. S. 1909, gives a widow dower in all lands of which her husband was seized of an estate of inheritance at any time during the marriage. Section 358 provides that no judgment or decree confessed by or recorded against the husband shall prejudice her right and interest. Where, therefore, the land was sold under judgment on a creditor's bill against him to which the wife was not a party, the right of dower is not divested, though a creditor who had a right to a vendor's lien was made a defendant and was preferred by the judgment.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

REVERSED AND REMANDED.

*Fry & Rodgers* for appellant.

(1) · When dower once attaches the husband cannot by any act or omission defeat it. Davis v. Green, 102 Mo. 180; R. S. 1909, Sec. 358. (2) The widow is entitled to dower subject to a vendor's lien. The land was not sold under or to enforce the vendor's lien. It was sold under the execution on the judgment against Holt on the accounts, and on the order of the court "so as to vest perfect title in the purchaser," the amount of the vendor's lien was ordered paid first out of the proceeds of the sale. Where the vendee of land has taken possession and paid part of purchase money, although no deed has passed, he has such interest as will make his vendor stand seized to his use; and after his death and sale by his administrator, his widow will have dower in the land, subject perhaps, to contribution of her proportion of amount paid by the administrator in satisfaction of vendor's lien. Hart v. Logan, 49 Mo. 47; Duke v. Brandt, 51 Mo. 221; Jones v. Bragg, 33 Mo. 337; Atkinson v. Stewart, 46 Mo. 510; Atkinson v. Angert, 46 Mo. 515; Thomas v. Hesse, 34 Mo. 13; Sweaney v. Mallory, 62 Mo. 485; Casteil v. Potter, 176 Mo. 76; Chrisman v. Linderman, 202 Mo. 605.

*Robertson & Robertson* for respondent.

(1) The appellant having failed to save an exception to the overruling of her motion for a new trial is precluded from an examination of any question except such as may appear upon the face of the record proper. Casler v. Chase, 160 Mo. 418; Hoffman v. Trust Co., 150

Mo. 520; Sicher v. Ramboseck, 193 Mo. 113; Wilbrandt v. Light Co., 135 Mo. App. 220; Serrano v. Railroad, 131 S. W. 371. The appellant makes no point on the record proper and her whole complaint is directed against such matters as are preserved within the bill of exceptions and having saved no exception to the overruling of the motion for new trial, the judgment should be affirmed. (2) The purchase price of the land not having been paid by plaintiff's husband to C. B. Rodes and there having been a judgment of foreclosure under the vendor's lien for the purchase price, the plaintiff can have no dower in the lands. Jones v. Bragg, 33 Mo. 337; Hart v. Logan, 49 Mo. 47; Duke v. Brandt, 51 Mo. 221; 14 Cyc. 948, 949, 917 (3); Fountaine v. Bank, 57 Mo. 552; 10 Am. & Eng. Ency. Law (2 Ed.), 137, 140; Bennett v. Shipley, 82 Mo. 448.

BROWN, C.—This action was instituted to the September term, 1907, of the Audrain Circuit Court, for the admeasurement of dower in the east half of the northeast quarter, and the east half of the west half of the northeast quarter, of section four, in township fifty-two of range ten in said county.

The petition states, in substance, that the plaintiff was lawfully married to S. W. Holt on the twentieth day of August, 1865, and lived with him as his wife until his death, which occurred April 28, 1907. That he died seized of an estate of inheritance in said real estate, and that she thereby became lawfully entitled to the possession of an undivided one-third part thereof as her reasonable dower therein. That defendant afterward entered into the premises and wrongfully deforced her thereof, and unlawfully withholds the same from her, after demand therefor, to her damage in the sum of $500. That the monthly value of the rents and profits of her dower is fifty dollars. She asks for the admeasurement of her dower and for damages as aforesaid and for general relief.

The answer so far as applicable to the issues in this case is as follows:

"Now comes the defendant and for his answer to plaintiff's petition, denies each and every allegation thereof, not hereinafter specifically admitted to be true.

"Defendant further answering, admits that he is the owner of and in possession of the said *lands* described in plaintiff's petition, and says that on the 5th day of March, 1879, one Charles B. Rodes, conveyed said lands to S. W. Holt, but defendant says that the said S. W. Holt never took possession of said lands nor was he entitled to the possession thereof.

"That said lands at that date were of the value of about seven dollars per acre and there were included in said conveyance not only the said lands described in petition but a total acreage amounting to two hundred and seventy acres.

"That on said date said S. W. Holt was in possession of and in the control of certain moneys, means and merchandise belonging to various and different parties and that at the date of said sale there was a deed of trust upon said lands for the sum of one thousand dollars and some interest which the said S. W. Holt assumed and agreed to pay as part of the purchase price thereof and this said balance of one thousand dollars remained as a vendor's lien against said lands in favor of the said C. B. Rodes, and the said S. W. Holt took the said property, means, merchandise and money which belonged to the parties aforesaid, and against their rights and invested the same in said lands without their knowledge or consent, and he then and thereby became a trustee for the owners of said merchandise, means and money, and held said lands for the use and benefit of said various parties.

"That all of said parties in the Moberly Court of Common Pleas, a court of general jurisdiction of the

State of Missouri, obtained judgments against the said S. W. Holt for the unlawful conversion of said merchandise, means and money, and said judgments were as follows:

"One in favor of Vogel & Kohn for .... $396.69
One in favor of Somers & Lynd for ..... 309.11
One in favor of E. J. Sears for ........ 193.56
One in favor of A. A. Mellier for ....... 210.03
One in favor of S. Kinsbaker & Bro. for  295.25
One in favor of Malin, Fowler & Co. for  253.83
One in favor of Brown & Moore for .... 169.00

"And after said different claims had been reduced to judgments in favor of said various parties in said court of common pleas, in 1879, the said parties filed their suit in the circuit court of Audrain county to compel the payment of their said several judgments and have the same declared to be a lien against the lands described in plaintiff's petition and all of the said lands amounting to two hundred and seventy acres, and at the June term, 1880, in an action between all of said parties and C. B. Rodes and the said S. W. Holt, the said circuit court, being a court of general jurisdiction and having jurisdiction over the subject-matter and all of the parties thereto, did render a judgment ordering and decreeing that all of said lands be sold and did find that there was a balance due the said C. B. Rodes from the said Holt on the purchase price of said lands amounting in all to the sum of one thousand and twenty-seven and 30.100, and further decreeing that said judgment in favor said C. B. Rodes and against said Holt for said purchase price should bear interest at the rate of eight per cent per annum and did further find and determine that in said judgment the said Rodes had a prior lien on said lands until said amount was paid, and did further determine that said lands should be sold for the purchase price thereof in favor of said Rodes and that the balance of the proceeds arising from

the sale of said lands after the purchase price and the expenses of said action was paid, should be applied upon their respective judgments in favor of the parties aforesaid in accordance with the respective amounts of their said judgments.

"That the court further entered an order and judgment finding in favor of said S. W. Holt that he was entitled to $300 of exemptions out of said lands and that said $300 be paid over to the said S. W. Holt and that the same be a prior judgment to all of the judgments aforesaid in favor of said parties, and did further order and decree that all of said lands be sold.

"Defendant further answering, says that said lands were sold under said decree at the October term of the said Audrain Circuit Court in 1880 and that the total cost of said sale amounted to $108.25, and that all of said land sold for the sum of nineteen hundred dollars, being the fair cash market value of said lands at said date, and the proceeds of said sale were first devoted to the payment of said costs, and second, to the payment of said judgment for said vendor's lien, and third, to the payment of said judgment for exemptions in favor of said S. W. Holt, and fourth, the remainder was distributed pro rata among the said several creditors aforesaid."

The plaintiff replied by general denial, and the cause went to trial. A jury was waived, and the court, after hearing the evidence, found the issues for defendant and entered judgment accordingly, from which this appeal was taken.

The plaintiff in due time filed her motion for a new trial which was overruled by the court. No exception was taken by her to this ruling. She filed in due time her bill of exceptions, setting out the evidence and other proceedings at the trial.

No exception was taken by the plaintiff to the action of the court in overruling the motion for a new

trial. No rule of practice is more firmly established in this State than that all matters of exception must be presented for re-examination in the motion for a new trial, and exception taken, and preserved in a bill of exceptions, to the final action of the court thereon, to authorize their examination upon appeal or writ of error. Our examination of the errors complained of in this case must therefore be confined to such as appear upon the record proper. [Sicher v. Rambousek, 193 Mo. 113, 128, and cases cited.]

The petition contains all the averments necessary in a suit for the assignment of dower in the lands described in it, including the statement that the plaintiff was married to S. W. Holt in 1865, and continued to live with him as his wife until his death, which occurred April 28, 1907, and that during that time the husband was seized of an absolute estate of inheritance in the land. The question for our consideration is, whether the answer states a defense to that cause of action.

It begins with the statement that "the defendant for his answer to plaintiff's petition, denies each and every allegation thereof, not hereinafter specifically admitted to be true." It then proceeds to state, in substance, that on the 5th day of March, 1879, Holt, by conveyance from one Charles B. Rodes, became seized in fee of the lands in controversy, which were then incumbered by a deed of trust to secure the payment of $1000, which Holt assumed and agreed to pay as part of the purchase price; that afterwards seven individuals and firms named in the answer recovered several judgments in the Moberly Court of Common Pleas against Holt for sums aggregating $1824.47, and that thereafter, in 1880, these several parties joined in a suit in the Audrain Circuit Court to compel the payment of their several judgments and to have the same declared liens against the lands of Holt; that both Holt and Rodes were impleaded as defend-

ants in the said suit, which resulted in a judgment that all the lands be sold; that there was a balance due Rodes from Holt on the purchase price of the lands amounting to $1027.30 with interest at eight per cent per annum, for which he had a lien prior to the lien of the judgments; that $300 be next paid to Holt by way of exemption, and that the remainder be distributed among the complaining judgment creditors. That the lands, being the same 270 acres conveyed by Rodes to Holt, were sold under this judgment for $1900, their fair cash market value, and the proceeds, after the payment of costs amounting to $108.25, were distributed according to the terms of the judgment; that since the sale, valuable and lasting improvements have been placed upon the land by which it has been greatly enhanced in value, and that *"on account of the facts aforesaid,* the said plaintiff has not and cannot have any dower interest in and to said lands.''

We think that this answer necessarily admits the marriage of plaintiff and death of her husband, as stated in the petition, by affirmatively placing the defense squarely upon the new matter pleaded in avoidance. The effect of this same kind of pleading was subjected to the consideration of this court in State v. Delmar Jockey Club, 200 Mo. 34, 60. In that case the information charged that the respondent had failed to exercise certain franchises which it had assumed by its act of incorporation to do. The answer, so far as it serves to illustrate the point in question, is as follows (p. 60):

"Respondent, Delmar Jockey Club, comes by its attorneys, and for its answer to the information of the Attorney-General herein, admits that it is a corporation duly organized and incorporated under the laws of the State of Missouri and denies each and every other allegation in said information alleged or contained.

"Wherefore respondent prays that it be hence discharged with its costs.

"2.   For its further answer to that portion of the information of the Attorney-General herein, wherein it is alleged that respondent has failed to exercise certain franchises, claimed to be possessed by it, this respondent states that it has fully carried out and exercised all those provisions in its charter authorizing it to give exhibitions of agricultural products and exhibitions of contests of speed and races between horses for the purpose of encouraging and promoting agriculture and the improvement of stock, and has provided suitable fair grounds for the same, *in this*" and proceeds to state certain acts which it claims to be a full performance of all such provisions of its charter.   It then again denied each and every charge, allegation or assertion of a contrary purpose contained in the information.   This court, in its opinion by GRAVES, J., held (p. 63) that although the general denial, without further pleading, put in issue all the charges in the information, the plea following it amounted to a confession and avoidance.   So the plea in this case, stating, as it does, that the plaintiff has no dower on account of the facts pleaded, is simply a statement in another, although no less definite form, that she would have her dower were it not for the existence of such facts.   It amounts to a confession and avoidance, and will be so treated.   The defendant seems to take the same view, for, in his brief (p. 6) he says:   "In this case the plaintiff was living with her husband at the time he acquired the title to the land and at the time it was sold under the judgment of foreclosure and he did not die until April 23, 1907, twenty-seven years after his title had been extinguished in the land."   Its effect is to present the question whether or not the sale of the lands under a judgment rendered upon a creditor's bill, and payment, out of the fund so produced, of a debt for the

purchase price, during the lifetime of the debtor, bars the dower of the widow.

"Dower is not the result of contract, but a positive institution of the State, founded on reasons of policy." [1 Washburn on Real Property (6 Ed.), Sec. 356.] The policy of this State in that respect has been clearly expressed by the Legislature, so that we must go to the statutes as the primary source of information, and from them we are immediately impressed by the care with which the interests of the widow have been recognized and protected. New estates, both legal and equitable, have been subjected to this beneficent burden, and new safeguards have been prescribed to prevent its dissipation by the fault or improvidence of the husband. These provisions, so far as they relate to the questions in this case, have endured so long that it will be sufficient to refer to them by citation from the present revision.

Sec. 345, R. S. 1909, provides that "every widow shall be endowed of a third part of all the lands whereof her husband, or any person to his use, was seized of an estate of inheritance, at any time during the marriage, to which she shall not have relinquished her right of dower, in the manner prescribed by law, to hold and enjoy during her natural life." Our first glance at this sentence impresses us with its sweeping innovation upon the doctrines of the common law, which leaves dower in equitable estates at the mercy of the husband during his life, while this statute couples them so inseparably with legal estates of inheritance that every expression designed for the protection and security of one, applies equally to the other. The provisions of Sec. 358, that *"no judgment or decree confessed by or recovered against him, and no laches, default, covin or crime of the husband* shall prejudice the right and interest of the wife," applies equally to all estates and interests in which dower is recognized or created by the statute.

Under the common law there were certain collu-
sive suits, called "levying a fine," and "suffering" a
common recovery, by which the dower or the interest
of the wife might be barred by a fictitious judicial
record. For instance, "the Statute of 18 Edw. I. *De
Modo Levandi Fines,* enacted that if a feme covert
should be one of the parties to a fine, then she must
first be examined by certain justices, and if she did not
assent to the fine it should not be levied. Yet this was
always understood to mean that the fine ought not to
be received without her examination and free consent,
but that if it was received and recorded, neither she
nor her heirs could be permitted to aver that she was
not examined and did not consent." [Hits v. Jenks,
123 U. S. 297.] At the time of the enactment of our
statute, the levying of a fine had been superseded by
deed, which must be both signed and acknowledged
by the wife, but the Legislature certainly believed that
there were other proceedings in which a collusive judg-
ment might be obtained and used for the same pur-
pose, and guarded against such an abuse by the sweep-
ing provision last quoted. It provides that no judg-
ment against *him* shall prejudice her right and in-
terest. This being so, it is evident that no sale found-
ed upon such a judgment can deprive her of that right.
[Grady v. McCorkle, 57 Mo. 172; Williams v. Court-
ney, 77 Mo. 587.]

In Davis v. Green, 102 Mo. 170, 181, RAY, C. J.,
speaking for this court about the effect of this stat-
ute upon a state of facts strongly resembling, in prin-
ciple, those involved in this case, citing Grady v. Mc-
Corkle, supra, said: "The further claim in defend-
ant's behalf is, that the equity of Williams, the judg-
ment purchaser, is equal, in point of time, to that of
Davis, the partition purchaser; yet it does not follow
that it is equal to the widow's dower in the favor and
protection of the statute. . . . In this connec-
tion, we may here add that it is not true, as stated in

the argument of defendant's counsel, that the widow's title is no better than an heir's. The law nowhere awards to the heir's title the same measure of protection that is accorded to the wife's right, in the section of the statute last quoted, against the husband's acts and those of *judgment creditors*. While, in a certain sense, she *takes* under the husband, in a larger sense she *holds* under the statute that exempts her rights from the prejudicial acts of the husband and the *judicial* proceedings of creditors and others. In this case, whether the wife is to be regarded as endowable by reason of the equitable or legal seizin of her husband, in either event, she is equally within the protection and exemption accorded her by the sections of the dower act above set out.''

The italics in the foregoing quotation are those of the learned judge who wrote the opinion, and illustrate that he had in his mind that the provision of the statute that ''no judgment or decree confessed by or recovered against'' the husband shall prejudice the right and interest of the wife was not directed to the voluntary act of confession of the husband alone, but took hold of the judgment creditor himself, forbidding that any judicial proceeding instituted by him against the husband alone should prejudice her right. The statute is unequivocal, and our duty is confined to the judicial exposition and enforcement of the express will of the Legislature. The application of the rule we have stated to the circumstances of this case is peculiarly free from complication and difficulty. Of all those interests in lands which are denominated liens, that of the vendor for his purchase money is perhaps the most limited and uncertain, so that its existence, in one sense, may be said to depend upon the contingency of the election of the vendor to enforce it. Although it may be enforced as against the inchoate right of dower of the wife of the vendee or the dower consummate of his widow, it is destroyed by the

conveyance of the land by the husband alone to a pur-
chaser without notice of its existence. As to its stand-
ing against creditors Chief Justice MARSHALL, in
Bayley v. Greenleaf, 7 Wheat. 46, says: "It would
seem inconsistent with the principles of equity, and
with the general spirit of our laws, that such a lien
should be set up in a court of chancery, to the ex-
clusion of *bona fide* creditors. The court would re-
quire cases in which this principle is expressly decided,
before its correctness can be admitted." The lien ex-
ists only by implication, and is not a vested interest
in the property. [Phillips v. Schall, 21 Mo. App. 38,
44; Orrick v. Durham, 79 Mo. 174.] Where it can be
gathered, from all facts and circumstances surround-
ing the sale, that the vendor did not intend to re-
tain his lien, it will be as effectually destroyed as if
he had taken independent collateral security; and the
taking of a mortgage for a portion of the purchase
money indicates a waiver of the lien as to the residue.
(Orrick v. Durham, supra). In the same case it was
held, on the strength of authorities cited, that the
express contract that the lien shall be retained to a
specified extent is equivalent to a waiver of that lien
to any greater extent. "It is a right which has no
existence until it is established by the decree of a court
in the particular case." (Dickason v. Fisher, 137 Mo.
342, 352); and if he cause the land to be sold under
a judgment for any portion of the purchase price, he
thereby waives his lien as to the whole. The very
existence of this lien, depending as it does upon the
decree of the court, which enforces the rights peculiar
to it, can be perfected and preserved in no other way.
The result cannot be reached by any collateral pro-
ceeding. [2 Washburn on Real Property (6 Ed.), Sec.
1030.] To use the words of an eminent author upon
the question at issue here, "It is necessary, also, in
order to divest dower, that the proceedings of the
vendor be expressly founded upon his equitable lien,

and for the enforcement thereof." [1 Scribner on Dower (2 Ed.), p. 558.] It necessarily follows this proposition that where the lands are sold in any other proceeding or for any other purpose the widow may claim her dower as of an unincumbered estate. The court in McArthur v. Porter, 1 Ohio, 99, in considering this question say: "George Porter, the deceased, acquired, by his patent, an estate of inheritance in the lands in question. The defendant, Sarah, by her marriage with George Porter, acquired the right of being endowed in these lands, if she survived her husband. Upon his death, this right invested her with a complete, perfect, legal estate. If an equitable lien existed upon the lands for purchase money, it belonged to Talliaferro, and no one else. As to all the world beside, her right was clear and unquestionable at law."

In this case the burden was upon the defendant to plead such facts as would affirmatively show that the right of dower existing in the plaintiff by virtue of her husband's seizin of an estate of inheritance in the lands in question during the marriage had been extinguished. This could be done only by pleading that Rodes, the vendor to Holt, in a proceeding instituted by him for that purpose had enforced a vendor's lien and secured a sale and conveyance of the property thereunder. So far from having pleaded such a state of facts, the averments are that others brought suit for the purpose of marshaling the property of Holt for the payment of their own judgment liens; that to this suit they made Rodes a party; that final judgment was rendered by which Rodes was given a preferred claim upon the proceeds of the sale under the judgment; that Holt himself was next allowed a portion of the proceeds, and that the remainder was divided between the plaintiffs in the suit. There is no hint in the answer that Rodes asked for any affirm-

ative relief, whatever, or that he pleaded in any way in the action, nor is there any statement that Mrs. Holt was a party. Had Rodes been a mortgagee, holding for his security the legal title instead of an intangible right to ask a court of equity to declare a lien in his favor, the allowance of his debt and its payment as a preferential claim from the proceeds of the mortgaged land, during the lifetime of the husband, would not have prejudiced the wife's right of dower, even though she had joined in the mortgage. [Atkinson v. Stewart, 46 Mo. 510, 514; Atkinson v. Angert, 46 Mo. 515; Jones v. Bragg, 33 Mo. 337, 339.]

We think that this answer fails to state a defense to the cause of action stated in the petition because, (1) the judgment in the case of Vogel et al. v. Holt et al. having been rendered in a proceeding in which this plaintiff was not a party did not and could not under the circumstances prejudice her right, as the wife of Holt, to dower in the land in question; (2) the proceeding, the judgment in which is pleaded as a bar to her dower not having been instituted or prosecuted by Rodes for the purpose of enforcing his lien, cannot now be used by others for that purpose.

Although we are not at liberty to use the evidence preserved in the bill of exceptions for the purpose of predicating error in the action of the court in overruling the motion for a new trial, it is before us for any legitimate purpose. We have, for the purpose of satisfying ourselves as to whether any injustice has resulted from a failure on the part of the defendant to plead facts available to him as a defense, carefully read the record in Vogel v. Holt et al., and find that it is used in this answer for at least all it contains, so that no injustice has resulted from its action. Respondent also states in his brief that in the deed from Rodes to Holt, a vendor's lien was expressly reserved

for $419.30. This assists us materially in characterizing the proceeding under which the land was sold.

The answer in this case states that the vendor's lien relied on grows out of the failure of the vendee to pay a first mortgage of $1000, which he assumed with the purchase. In the view we have taken of the case it has been unnecessary to investigate the question whether such a lien can rest upon the failure to discharge a debt secured by mortgage upon the same land, so that we do not wish to be understood as deciding that question.

For the reasons stated the judgment of the Audrain Circuit Court is reversed, and cause remanded for further proceedings in accordance with this opinion. *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of Brown, C., is adopted as the opinion of the court. All the judges concur; *Woodson, J.,* in result only.