**UNITED STATES v. WAITE et al. CROOKS, Collector of Internal Revenue, v. WAITE et al. SAME v. HIBBARD.**[*]

Circuit Court of Appeals, Eighth Circuit.
May 30, 1929.

Nos. 8425–8427.

[*]Rehearing denied September 30, 1929.

Ottamar Hamele, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., (Roscoe C. Patterson, U. S. Atty., and Harry L. Thomas, Asst. U. S. Atty., both of Kansas City, Mo., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellants.

Allen McReynolds and J. H. Flanigan, both of Carthage, Mo., and F. M. Petree, for appellees Waite and others.

Frank Petree, of Oregon, Mo., for appellee Hibbard.

Paul R. Stinson, of Kansas City, Mo. (I. P. Ryland, Arthur Mag, and Roy B. Thomson, all of Kansas City, Mo., Thomas Johnston McGuire, of Omaha, Neb., Allen McReynolds, of Carthage, Mo., and Frank Petree, of Oregon, Mo., on the brief), for Ella C. Loose, amicus curiæ.

Before VAN VALKENBURGH and COTTERAL, Circuit Judges, and SCOTT, District Judge.

SCOTT, District Judge. The three foregoing entitled cases were argued and submitted together. They involve identical questions. Nos. 8425 and 8426, grow out of an estate tax assessed and paid on the estate of Alfred H. Rogers, deceased, under the Revenue Act of 1918 (40 Stat. 1057). The reason for two cases is that certain payments of the tax assessed were paid to George F. Crutchley, collector of internal revenue for the Western district of Missouri, who before subsequent payments were made died. Recovery for excess of such payments is attempted in case No. 8425, brought in the court below against the United States. Subsequent payments were made to Noah Crooks, collector of internal revenue for said district, and recovery of alleged excess payments to him is attempted in case No. 8426, brought in the court below against said Crooks, as collector. Case No. 8427 grows out of certain alleged excess payments of estate tax assessed and paid on the estate of Charles D. Zook, deceased, under the Revenue Act of 1918.

The material allegations of the petitions in the three cases are substantially the same, mutatis mutandis. We shall, therefore, state them without repetition.

Taking the petition in case No. 8425 as an illustration, plaintiffs in their petition allege in substance: That they are the duly qualified executors of the estate of Alfred H. Rogers, deceased, who died March 6, 1920, leaving surviving him as heirs his widow, Katherine C. Rogers, a son, Harrison C. Rogers, and a daughter, Le Claire Rogers Estes. That Alfred H. Rogers died testate, but that within the time required by the statutes of Missouri, and on July 30, 1920, Katherine C. Rogers, widow, filed in the probate court of Jasper county, Missouri, a rejection of said will, by the terms of which she refused to accept the provisions thereof and elected to take under the statutes of said state, and reserved to herself in the estate of the decedent her marital rights, to wit, a child's part in lieu of the provisions made by said will. (Then follow certain allegations relative to the widow's rights under state statutes, and certain proceedings in the state courts over state inheritance tax assessments, and the result of such proceedings, all of which we do not deem of importance here, being argumentative only). That pursuant to the terms of the Revenue Act of 1918, on the 22d day of January, 1921, plaintiffs filed with the collector of internal revenue for the Western district of Missouri, a return on form 23A by which they showed that A. H. Rogers was possessed at the time of his death of an estate of $892,389.97, on which there was due a tax of $42,891.20, which said tax within the time required by statute was by the plaintiffs paid to the collector of internal revenue for said district. That subsequently an examiner, representing the Treasury Department, examined said estate, and on the 11th day of April, 1923, the deputy commissioner of Internal Revenue, notified plaintiffs of an additional tax liability of $25,549.28, based upon an increase of valuation. That subsequently, and within the time required by statute and provided by the rules of the Treasury Department, they filed pleas sic in abatement directed to the question of the valuation of the property, and claiming an exemption of that part of the tax which was assessed against the marital rights of Katherine C. Rogers, and that the tax assessed was excessive and illegal. That said plea sic in abatement, based upon the contention that the interest of Katherine C. Rogers was not subject to tax and the tax was illegal, was overruled by the department on the 26th day of Decem-

ber, 1923, and the plea sic in abatement based on the original valuation was overruled in part and allowed in part on the 24th day of November, 1923, and that plaintiffs were required to pay an additional sum of $23,665.11. That said additional tax was on the 25th day of February, 1924, paid. That on the ——— day of September, 1924, and within the time allowed by statute, plaintiffs filed a claim for refund with the Treasury Department asserting that the collection of tax by the department was illegal and erroneous, and claiming a refund of $34,759.80 on account of payment of taxes upon that part of the estate of A. H. Rogers which under the laws of the state of Missouri belonged to Katherine C. Rogers. That subsequently, on the 4th day of December, 1924, said claim for refund was rejected. That plaintiffs paid to George F. Crutchley, collector, etc., a total sum of $42,891.20. That they paid to Noah Crooks, collector, etc., the sum of $24,755.75, making a total tax payment of $67,546.95, the amount being assessed by the Internal Revenue Department against said estate. (The above alleged payment to Noah Crooks, collector, is the payment for which recovery is asked in case No. 8426.)

Plaintiffs then plead: that the following provision of the Revenue Act of 1918 (40 Stat. 1097): "Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated. * * * (b) To the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower, curtesy, or by virtue of a statute creating an estate in lieu of dower or curtesy," should not be construed to authorize or require the inclusion as part of the gross estate of said decedent subject to said estate tax, the interest in the property above described belonging to and vesting in Katherine C. Rogers as aforesaid. That in so far as said provision has been so construed by the taxing authorities, and said authorities have assumed to require the said interest as surviving wife of the decedent to be included as part of the said gross estate, said act of Congress and the provisions thereof aforesaid, as well as the construction and application thereof by the taxing authorities, were and are in conflict with the following provisions of the Constitution of the United States, to wit, that part of section 2, article 1, providing as follows: "Representatives and direct taxes shall be apportioned among the several states which may be included within this Union, according to their respective numbers, which shall be determined by adding to the whole number of free persons, including those bound to service for a term of years, and excluding Indians not taxed, three-fifths of all other persons. The actual enumeration shall be made within three years after the first meeting of the Congress of the United States, and within every subsequent term of ten years, in such manner as they shall by law direct," and that part of section 9, article 1, as follows, to wit: "No capitation or other direct tax shall be laid, unless in proportion to the census or enumeration herein before directed to be taken."

That the imposition of the said federal estate tax upon the interest of Katherine C. Rogers in said property was in substance and effect, a direct tax upon said property not laid, imposed or apportioned in accordance with the foregoing provisions of the Constitution of the United States, but in violation thereof, and was not and is not a tax or excise upon property derived by Katherine C. Rogers from the said decedent through descent, transfer, inheritance, devise or gift. That the material rights of Katherine C. Rogers in the property of Alfred H. Rogers, deceased, were of the value of $396,880.28, and that, deducting that amount from the total value of said estate, the amount of legal tax due would be $32,787.15. That the collection of $34,759.80 additional was erroneous and without warrant of law. That of that sum $25,441.50 was paid by plaintiff to Noah Crooks, collector, etc., and that suit has been instituted against Noah Crooks (No. 8426) to recover said excessive collection, and that said sum $8,131.40 was paid to George F. Crutchley, collector, etc. That George F. Crutchley has departed this life, and as in such case made and provided this suit is instituted against the United States of America for the purpose of recovering said excess and erroneous tax. A prayer then follows for judgment for $8,131.40.

In cases Nos. 8426 and 8427 the prayers are for the respective amounts of the alleged excess. In No. 8427, the amount involved is $15,377.99, alleged to have been erroneously assessed upon the interest of Emma D. Zook, widow, in the estate of Charles D. Zook.

To the respective petitions in these cases the defendants demurred upon the ground that the petitions failed to state facts sufficient to constitute causes of action. These demurrers were all overruled and the defendants elected to stand upon the demurrers. In each case judgment was entered against the defendants for the respective sums prayed

for, and exceptions duly preserved. From the judgments so entered the United States and Noah Crooks, collector of internal revenue for the Western district of Missouri, respectively, have appealed.

The Revenue Act of 1918, provides:

"Sec. 401. That * * * a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 403) is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this act. * * *

"Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate;

"(b) To the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower, curtesy, or by virtue of a statute creating an estate in lieu of dower or curtesy."

The following are sections from the Revised Statutes of Missouri of 1919, relating to the estates of decedents, and previously existing in other publications during the period material to this discussion:

"Sec. 303. Real and Personal Estate Descends, to Whom.—When any person having title to any real estate or inheritance, or personal estate undisposed of, or otherwise limited by marriage settlement, shall die intestate as to such estate, it shall descend and be distributed in parcenary, to his kindred, male and female, subject to the payment of his debts and the widow's dower, in the following course: First, to his children, or their descendants, in equal parts; second, if there be no children, or their descendants, then to his father, mother, brother and sisters, and their descendants in equal parts; third, if there be no children, or their descendants, father, mother, brother or sister, nor their descendants, then to the husband or wife; if there be no husband or wife, then to the grandfather, grandmother, uncles and aunts, and their descendants, in equal parts; fourth, if there be no children or their descendants, father, mother, brother, sister, or their descendants, husband or wife, grandfather, grandmother, uncles, aunts nor their descendants, then to the great-grandfathers, great-grandmothers, and their descendants, in equal parts; and so on, in other cases, without end, passing to the nearest lineal ancestors and their children, and their descendants, in equal parts."

"Sec. 315. Dower in Real Estate.—Every widow shall be endowed of the third part of all the lands whereof her husbad, or any other person to his use, was seized of an estate of inheritance, at any time during the marriage, to which she shall not have relinquished her right of dower, in the manner prescribed by law, to hold and enjoy during her natural life. Dower in leasehold estate for a term of twenty years or more shall be granted and assigned as in real estate; for a less term than twenty years, shall be granted and assigned as in personal property."

"Sec. 319. Share of Widow or Widower in Personal Estate.—When the husband or wife shall die, leaving a child or children or other descendants, the widow or widower shall be entitled absolutely to a share in the personal estate belonging to the husband or wife at the time of his or her death, equal to the share of a child of such deceased husband or wife."

"Sec. 324. Child's Part, When Taken in Lieu of Dower.—When the husband shall die, leaving a child or children or other descendants, the widow, if she has a child or children by such husband living, may, in lieu of dower of the one-third part of all lands whereof her husband died or shall die seized of an estate of inheritance, to hold and enjoy during her natural life, elect to be endowed absolutely in a share of such lands equal to the share of a child of such deceased husband. The provisions of this section shall be subject to the payment of her husband's debts."

A decision of these cases involves consideration of three questions:

1. What is the character of the tax imposed, is it a direct tax on property, or an excise or a death duty upon the transfer of property?

2. Assuming that the tax is not direct, was there a transfer within the meaning of the Revenue Act in question of the shares of the respective widows in the real estate and personal estate of the deceased husbands?

3. Did the respective classes of property taken by the widows under the statutes of Missouri fall within the requirements of sections 401 and 402 of the Revenue Act of 1918?

■ We shall discuss these questions in the order stated. The late Chief Justice White, then Mr. Justice White in Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969, in premising the opinion of the court

in that case, said: "The inquiry whether the taxes are direct or indirect must involve the prior determination of the objects or rights upon which by law they are imposed and assessed, since it becomes essential primarily to know what the law assesses and taxes in order to completely learn the nature of the burden." The quoted statement was made, however, some 30 years ago, before the path was beaten to the objective of the inquiry. The case of Knowlton v. Moore, supra, and the numerous cases following since its time, we think have settled the question, and fully determined that the tax imposed by the sections of the Revenue Act in question was not intended to be a direct tax, but an excise or death duty, in the sense in which those terms have been understood since the time when provision for the imposition of taxes of that character first found place in the legislation of this country. Mr. Justice White, in the case cited, further said: "Taxes of this general character are universally deemed to relate, not to property eo nomine, but to its passage by will or by descent in cases of intestacy, as distinguished from taxes imposed on property, real or personal as such because of its ownership and possession." And again: "What it taxes is not the interest to which some person succeeds on a death, but the interest which ceased by reason of the death." And again in the same opinion: "Confusion of thought may arise unless it be always remembered that, fundamentally considered, it is the power to transmit or the transmission or receipt of property by death which is the subject levied upon by all death duties."

We are not advised that the Supreme Court of the United States has ever departed from the principle announced in Knowlton v. Moore, supra, when considering the character of the tax in question. On the contrary, that principle seems to have been observed in all of the following cases: United States v. Field, 255 U. S. 257, 41 S. Ct. 256, 65 L. Ed. 617, 18 A. L. R. 1461; New York Trust Co. v. Eisner, 256 U. S. 345, 41 S. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660; Edwards v. Slocum, 264 U. S. 61, 44 S. Ct. 293, 68 L. Ed. 564; Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081; Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. ——; Chase National Bank v. United States, 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. ——; and a legion of other cases. Indeed, there seems to be no contention in these cases that the tax in question was intended to be other than an excise or death duty. The contention, however, seems to be rather that the imposition of the tax in

question upon the particular interest of a surviving spouse under the statute of Missouri, makes it equivalent of a direct tax because it is contended there was no transfer as to such interests. We shall discuss this phase of the case under the second question.

Taking up the second question, Was there a transfer, within the meaning of the Revenue Act, of the shares of the respective widows in the real estate and personal estate of the deceased husbands?

In determining this question we must consider, not only the language of the act itself and pronouncements of the Supreme Court in those instances in which that court has given interpretation and limitation to that particular term, but also the nature of the interest of the decedent at the time of his death, and the nature of the interest of the surviving spouse both before and after the death of the decedent. This is particularly true because these cases are pioneer cases, no cases having heretofore arisen so far as we are advised under statutes similar to the Missouri statutes in question. Careful examination and analysis of the sections of the Missouri statutes quoted, bring us to the conclusion that the language of section 315, "Every widow shall be endowed of the third part of all the lands whereof her husband, or any other person to his use, was seized of an estate of inheritance, at any time during the marriage, to which she shall not have relinquished her right of dower, in the manner prescribed by law, to hold and enjoy during her natural life," implies common-law dower.

"Common-law dower is an estate of freehold not of inheritance. Dower is measured by the husband's interest in the land, and can rise no higher. The common-law right of dower entitles the wife to a life estate, and a life estate only, in one-third of all the lands and tenements of which the husband was seized of an estate of inheritance at any time during the coverture." 19 C. J. 460. "The seizin at common law must have been of an estate of inheritance, with a freehold vested in the deceased husband." 19 C. J. 465. "For no estate of freehold can commence in futuro; because it cannot be created at common law without livery of seizin, or corporal possession of the land; and corporal possession cannot be given of an estate now, which is not to commence now, but hereafter." 2 Cooley's Blackstone, 143 (*144). "Since it is within the power of the Legislature to diminish, alter, or abolish dower so long as the right thereto is merely inchoate, but not after it becomes consummate by the death of the husband, it follows as a general rule that the

widow's right to dower in lands of which the husband died seized is governed by the law in force at the time of his death." 19 C. J. 461 (citing numerous Missouri cases among others).

We quote the foregoing texts in order to emphasize the characteristics of common law dower not only so far as that right pertains to the surviving spouse, but as it pertains to the estate of the husband upon which the right of the surviving spouse rests. So considered it is quite clear that a surviving widow's right of dower under the statutes of Missouri, while inchoate, has not all the attributes of absolute property. This is true, not only when considering constitutional guaranties, but when considering the right of a Legislature to abolish or modify the right. Much has been said in the briefs and in oral argument about the widow's right under the statutes of Missouri, as construed by the Supreme Court of that state, being her absolute property and subject neither to the husband's disposition nor his debts. Yes, quite true. But *what* was her absolute property? Manifestly the right of common-law dower; and the alternative right to elect to relinquish that right of common-law dower and take a child's share in the estate of the decedent with its incident, liability for the payment of the husband's debts and distribution as a part of his estate.

Recurring again to the language of the Supreme Court in Knowlton v. Moore, supra: "What it taxes is not the interest to which some person succeeds on a death, but the interest which ceased by reason of the death." Measured and tested by the characteristics of common-law dower, let us inquire what was the interest that ceased by reason of death and what was its characteristic? To constitute foundation for common-law dower, the husband must not only have been seized of an estate of inheritance, but he must have had the freehold estate, and that freehold estate ceased on his death, and immediately there ripened the freehold estate for life in the surviving widow. Whatever verbal quibbles and controversies may be indulged in, a more plain case of transfer by death cannot well be imagined, when we consider the freehold estate for life in the husband which is the essential foundation for dower and the freehold estate for life thereafter in the widow which is the estate of common law dower. Under section 303, Rev. St. Mo. 1919, real estate of inheritance descends to the husband's kindred subject to the widow's dower. We think that simply means that on the death of a freehold estate for life in one-

third of the lands vested in the surviving widow. All of the rest of such estate including the remainder in the one-third part assigned to the widow as dower passed to the kindred. We therefore come to the conclusion that on the death of a husband intestate seized of an estate of inheritance in lands and leaving a widow surviving there is under section 315 of the Missouri statutes quoted, a transfer within the meaning of section 401 of the Revenue Act of 1918, subject in case a child or children also survive, to the right of such widow to elect to take in lieu of such dower, under section 324 of the Missouri statutes, the share of a child.

Now what was the share of a child? Manifestly it is that share provided in section 303 of the Missouri statutes, supra, which the child takes in any real estate of inheritance of which the deceased had title at the time of his death, and which the child takes absolutely and to the extent of the estate of inheritance of which the father was seized. The widows in the instant cases elected to take the shares of a child under section 324, supra. The share of the child in the real estate upon such election thereupon vested absolutely rather than "to hold and enjoy during her natural life," but "subject to the payment of her husband's debts." We think there was no less a transfer of this child's share on the death of the husband and the election of the widow than in case there had been no such election. On the contrary, it would seem that in the latter case, if possible, the transfer is more apparent, for here the widow takes the entire estate in the portion assigned in lieu of dower.

But what we have said does not entirely dispose of the question. Most, if not all, of the decisions of the Supreme Court, where the inclusion of the subject was questioned because of the contention that it was not a part of the estate of the decedent, turned upon the power and right of disposition during the life of the decedent rather than upon the power and right of use and enjoyment during that period. That was true in Reinecke v. Northern Trust Co., supra, and in Chase National Bank v. United States, supra, and in many of the cases cited in the opinions in those cases. But the present cases it would seem must turn upon the power and right of use and enjoyment in the husband during life; that is, do the "economic benefits" which may be the subject of the tax necessarily include the power and right of disposition in the decedent during his lifetime, where there is a power and right of use and enjoyment during life? In answering

this question it must be borne in mind that the estate, gross and net, is an estate defined by the act of Congress. It must be further borne in mind that dower and estates created in lieu of dower are expressly included in the estate so defined by Congress. Therefore it would seem that in the last analysis we are brought to the question: Had Congress the power to so define the estates, and would so doing, in effect, as applied to such property, make the tax a direct tax? The decisions turning upon the power of disposition have frequently arisen in case of trusts, but we have found no case, and none has been called to our attention, where a trust has been created reserving a life use to the settlor, but not reserving power of disposition. While the question is a close one, we are not prepared to say that Congress has not the power to levy an excise tax or death duty where only the use and enjoyment remained vested during the lifetime of the decedent. To so hold would at least conflict with the Supreme Court's approval in Knowlton v. Moore, supra, of the text in Hanson's Death Duties that "what it taxes is not the interest to which some person succeeds on a death, but the interest which ceased by reason of the death."

We come now to the third question: Did the respective classes of property taken by the widows under the statutes of Missouri fall within the requirements of sections 401 and 402 of the Revenue Act of 1918? The petition in none of the cases makes it clear whether there is personal estate involved. The burden of the arguments on the briefs proceeds on the question of dower rights existing under the Missouri statutes. However, there is discussion which indicates there is both real and personal property involved, but how much of each class does not appear on the face of any of the petitions demurred to. We shall assume, however, for the purpose of this opinion, that there is both real and personal property. In this connection it is argued on the briefs that the real estate is not subject to the payment of expenses of administration, and hence does not fall within the requirements of subdivision (a), § 402. We think the answer to this contention is that the real estate is not necessarily required to fall within the scope of that subdivision. Subdivision (b) expressly says: "To the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower, curtesy, or by virtue of a statute creating an estate in lieu of dower or curtesy." This language seems to expressly cover the interest of the widow

in the real estate involved in these cases, as the portion taken by election is clearly an estate created in lieu of dower. Indeed, section 324 of the Missouri statutes expressly says: "in lieu of dower of the one-third part of all lands whereof her husband died or shall die seized of an estate of inheritance," etc.

It is next contended that the widow's share in the personal property does not fall within the requirements of subdivision (a) in that it is not subject to the payment of charges against the estate. We think this contention is not sound. Section 319 of the Missouri statutes provides as follows: "When the husband or wife shall die, leaving a child or children or other descendants, the widow or widower shall be entitled absolutely to a share in the personal estate belonging to the husband or wife at the time of his or her death, equal to the share of a child of such deceased husband or wife." Supreme Court of Missouri in Messersmith's Estate v. Messersmith, 264 Mo. 610, 175 S. W. 914, held that under this section (then Revised Statutes 1909, § 349) the widow takes as a distributee and not as a doweress, citing Howard v. Strode, 242 Mo. 218, 146 S. W. 792, Ann. Cas. 1913C, 1057; and Lich v. Lich, 158 Mo. App. 424, 138 S. W. 565. Indeed, when we recur to section 303, supra, we find that the child's share is expressly made subject to the payment of debts.

But counsel contend that the Supreme Court of Missouri, in Re Rogers' Estate (Mo. Sup.) 250 S. W. 576, decided that the share of the widow given by section 319 is not subject to the payment of the husband's debts. We do not think the Missouri court in that case so decided. No such question was involved in Re Rogers' Estate. The only question there involved was whether the widow's share should be included in the valuation in assessing the state inheritance tax, and the statute creating that tax did not require as an essential to its imposition that the property be liable for the debts of the decedent. The remarks of Mr. Justice White that "the provision in section 324 is subject to the payment of the husband's debts, while that of section 319 is not," seems to have been made merely in passing, and we think purely obiter dictum. The reason for not mentioning liability for payment of debts in section 319 is quite obvious, for the "child's share" had been expressly made liable for the payment of debts in section 303, while the widow's dower in that section was in effect relieved of liability for the payment of debts, and hence the further necessity for

special mention in section 324, when a child's share is taken in lieu of dower. But the widows' shares in the personal property in the instant cases were not taken in lieu of dower under section 324, but under section 319, and we think in that case the widow's rights were measured by the rights of a child.

We do not think we are bound to follow the dictum of the opinion in Re Rogers' Estate. The Supreme Court of the United States in Carroll v. Lessee of Carroll, 16 How. 275, 14 L. Ed. 936, Mr. Justice Curtis, speaking for the court, said: "If the construction put by the court of a state upon one of its statutes was not a matter in judgment, if it might have been decided either way without affecting any right brought into question, then, according to the principles of the common law, an opinion on such a question is not a decision. To make it so, there must have been an application of the judicial mind to the precise question necessary to be determined to fix the rights of the parties and decide to whom the property in contestation belongs. And therefore this court and other courts organized under the common law, has never held itself bound by any part of an opinion, in any case, which was not needful to the ascertainment of the right or title in question between the parties." We think that, so far as the personal estates of the respective decedents are concerned, they come within the requirements of subdivision (a) of section 402, supra.

It follows, from the conclusions reached in this opinion, that the District Court was in error in each of the cases under consideration in overruling the demurrers and in rendering judgment in favor of the plaintiffs. Each of the cases is therefore reversed, and the respective causes remanded, with direction to the District Court to sustain the respective demurrers.

Reversed and remanded.

VAN VALKENBURGH, Circuit Judge, (concurring). I concur in the conclusion reached by Judge SCOTT in the foregoing opinion, but the conditions presented in these cases differ so materially from those in cause No. 8325, United States v. Gould Dietz, 33 F. (2d) 576, just decided by us, that I desire to state some of my reasons for so doing.

In causes No. 8425 and No. 8426 Alfred H. Rogers died testate, leaving a widow and two children surviving him. The will was probated, and the widow rejected the terms thereof and elected to take a child's share of the estate. Whether the estate consisted of personal property alone, or both real and personal, does not appear. As the main argument is addressed to the inherent nature of dower, the latter situation may be presumed. The estate, then, would fall under sections 319 and 324, R. S. Mo. 1919.

In No. 8427, Charles D. Zook died intestate, leaving his widow and a daughter surviving him. The widow elected to take a child's share of the realty. The estate consisted of both real and personal property, the value of each class not pleaded. The widow also takes, without the necessity of election, a child's share in the personalty. Here, again, sections 319 and 324 apply.

The Supreme Court of Missouri in Howard v. Strode, 242 Mo. 210, 219, 221, 146 S. W. 792, Ann. Cas. 1913C, 1057, holds specifically that the portion of the husband's personalty given to the widow by section 349 (319) is not dower; that the wife, under that section, is not a doweress but a distributee; that as such distributee she takes subject to debts of the husband, and her interest can be ascertained only upon final settlement of the estate; furthermore, that as such distributee she stands in the same relation to the personal estate as does a child. Weindel v. Weindel, 126 Mo. 640, 29 S. W. 715 is cited with approval to the same effect. In that case (loc. cit. 650, 651 [29 S. W. 717]) it is assumed that the widow's share in the personalty under section 4517, R. S. Mo. 1889 (sections 349 [1909] and 319 [1919]) is subject to the debts of her deceased husband. In re Estate of Messersmith, 264 Mo. 610, 619, 175 S. W. 914; Howard v. Strode, supra, is cited and approved as to the character, capacity, and relationship of the widow under section 349 (319).

These cases dispose of the holding of the St. Louis Court of Appeals in Schaper's Ex'r v. Schaper, 158 Mo. App. 605, 138 S. W. 896, that, under section 349 (319), the widow takes the share of a child in respect to quantity only, and does not take in the character and capacity of a child, and speak more authoritatively with respect to subjecting to the husband's debts personalty taken under section 319, than does the casual and unnecessary reference in Re Rogers' Estate (Mo. Sup.) 250 S. W. 577. Section 558, R. S. Mo. 1919, imposed a tax upon transfer of property "when the transfer is by will or by the intestate laws of this state from any person dying possessed of the property while a resident of the state." The opinion proceeds to demonstrate that the laws by which the widow elected to take, on renunciation of the will, are not "intestate laws," and therefore the property which she acquired was

not subject to the state inheritance tax. It will thus be seen that the question there presented was entirely different from that before us. Furthermore, there can be no conflict between state and federal jurisdictions in this regard. Each is supreme in its own field. Allen, Collector, v. Henggeler, Adm'r (C. C. A. 8) 32 F.(2d) 69, decided March 25, 1929. It is true that the law of the state fixes "the quantity and quality of the decedent's interest in property left by him"; but, in determining whether any interest is taxable under federal law, "the act of Congress has its own criteria, irrespective of local law, that look to certain rather severe tests of liability and exemption." Weiss v. Wiener, decided April 22, 1929, 49 S. Ct. 337, 73 L. Ed. ——.

I confess that prior to the decisions of the Supreme Court in Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. ——, and in Chase National Bank v. United States, 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. ——, I should have thought that the absolute and indefeasible character of the estate vested in the wife under the Missouri statutes, as construed by the Supreme Court of that state, would exempt that estate from inclusion in the gross estate of a decedent under the provisions of section 402 of the Revenue Act of 1918. Sections 315, 319, 324, 325, and 326, R. S. Mo. 1919; Collier on Bankruptcy (13th Ed.) vol. 2, p. 1697; Holt v. Hanley, 245 Mo. 352, 149 S. W. 1; Blevins v. Smith, 104 Mo. 583, 16 S. W. 213, 13 L. R. A. 441; McClanahan v. Porter, 10 Mo. 746; Roberts v. Nelson, 86 Mo. 21; Davis v. Evans et al., 102 Mo. 164, 14 S. W. 875; McCrillis v. Thomas, 110 Mo. App. 699, 85 S. W. 673; Porter v. Lazaer, 109 U. S. 84, 3 S. Ct. 58, 27 L. Ed. 865; Marine National Bank v. Swigart (C. C. A. 6) 262 F. 854; Thomas v. Woods (C. C. A. 8) 173 F. 585, 586, 592, 26 L. R. A. (N. S.) 1180, 19 Ann. Cas. 1080; and that the following language in Nichols v. Coolidge, 274 U. S. 531, 542, 543, 47 S. Ct. 710, 714 (71 L. Ed. 1184, 52 A. L. R. 1081), would have controlling application:

"And we must conclude that section 402 (c) of the statute [40 Stat. 1097] here under consideration, in so far as it requires that there shall be included in the gross estate the value of property transferred by a decedent prior to its passage merely because the conveyance was intended to take effect in possession or enjoyment at or after his death, is arbitrary, capricious and amounts to confiscation."

It may be added that the great weight of prior decision, both state and federal, was to this effect. It is true that the subject-matter under consideration in the Chase National Bank and Reinecke Cases differs in marked degree from that now before us, but the language employed in those opinions is susceptible of wide application and would seem to be decisive of the cases at Bar if so extended. "The determination by death of any of the other legal incidents of property through which its use or economic enjoyment may be controlled" is pronounced a "transfer" and is made the legitimate subject of this tax. It is stated that the word "transfer" is not used in the commonly understood and restricted sense of the transmission of property directly from decedent to a transferee, and that "termination of the power of control at the time of death inures to the benefit of him who owns the property subject to the power and thus brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax."

Possession, use, enjoyment, or control by the decedent are evidently made the test. The property here involved responds thereto. As to real estate, the husband has full possession, use, and enjoyment during his lifetime, and control, short of conveyance or incumbrance in hostility to the dower interest. The personal property he may use and dispose of as he pleases, in regular course. It follows, then, under the cases cited, that the three conditions conjunctively essential to render an estate taxable under clause (a) of section 402, to wit, (1) an interest of the decedent at the time of his death, (2) subject after his death to the payment of charges against his estate and expenses of administration and (3) subject to distribution as part of his estate, are all present. United States v. Field, 255 U. S. 257, 41 S. Ct. 256, 65 L. Ed. 617, 18 A. L. R. 1461.

In deference to the latest rulings of the Supreme Court, as I construe them, I am constrained to concur in the reversal of these judgments.